# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CURTIS KINZEY,** | : CIVIL ACTION |
| Petitioner, | : |
| v. | : No. 16-5435 |
| **CAROLYN W. COLVIN,** | : |
| Respondent. | : |

## ORDER

**AND NOW**, this 18th day of March, 2019, upon consideration of Plaintiff's Request for Review (Doc. No. 9), Defendant's Response (Doc. No. 10), Plaintiff's Reply (Doc. No. 11), the Report and Recommendation by United States Magistrate Judge Elizabeth T. Hey (Doc. 14), Plaintiff's Objections (Doc. No. 15), and Defendant's Response to Objections (Doc. No. 17), I find as follows:

**I.     PROCEDURAL BACKGROUND**

1. On May 10, 2013 and May 31, 2013, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income, under Titles II and XVI respectively of the Social Security Act, 42 U.S.C. § 410, et seq., alleging disability due to insulin-dependent diabetes, attention deficit disorder ("ADD"), depression, Asperger's Syndrome, diabetic retinopathy, and an inability to stand, walk, or sit for long periods of time.

2. Plaintiff originally alleged a disability onset date of August 1, 2009, but later amended it to July 3, 2013.

3. The state agency denied his application initially, and Plaintiff requested an administrative hearing before an ALJ. Following the administrative hearing, the ALJ issued a decision, dated May 11, 2015, deeming Plaintiff not disabled.

4. On August 19, 2016, the Appeals Council denied Plaintiff's request for review.

5. Plaintiff filed this action on October 18, 2016, challenging the ALJ's decision. The matter was referred to Magistrate Judge Hey, who issued a Report and Recommendation ("R&R") on May 18, 2018, recommending that the ALJ's decision be affirmed.

6. Plaintiff timely filed objections on June 4, 2018, setting forth four allegations of error: (1) the Magistrate Judge failed to address why the ALJ did not recontact treating physician Dr. Putnam for a clarification; (2) substantial evidence does not support the ALJ's evaluation of consultative examining psychologist Dr. Fischetto; (3) the ALJ improperly found Plaintiff not credible based on her activities of daily living; and (4) the ALJ erred by determining that Plaintiff has only mild limitations in maintaining activities of daily living and moderate limitations in social functioning and concentration, persistence, or pace. I address each objection individually.[1]

---

[1] Where a United States Magistrate Judge has issued a report and recommendation in a social security case and a party makes a timely and specific objection to that report and recommendation, the district court is obliged to engage in de novo review of only those issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes. The court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). In the exercise of sound judicial discretion, the court may also rely on the Magistrate Judge's proposed findings and recommendations. See United v. Raddatz, 447 U.S. 667, 676 (1980).

## II. STANDARD OF REVIEW

7. Judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988)).

8. When making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190–91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'") (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

9. In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

## III. PLAINTIFF'S OBJECTIONS

### A. Objection 1 – Failure to Recontact Dr. Putnam

10. Plaintiff's first objection concerns the ALJ's refusal to give controlling weight to the Medical Source Statement opinion of treating physician Dr. Putnam. Judge Hey found that the ALJ's decision was well supported by substantial evidence because Dr. Putnam's assessment of Plaintiff's functioning was inconsistent with his own treatment notes and mental status examinations. Plaintiff now contends that Judge Hey failed to address his argument that if the ALJ believed Dr. Putnam's Medical Source Statement opinion was inconsistent, it was incumbent upon the ALJ to recontact the doctor for a clarification.

11. Plaintiff's misunderstands the scope of the duty to recontact. Social Security Ruling 96–5p provides that, "[b]ecause treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." Social Security Ruling 96-5, 1996 WL 374183, at *6 (S.S.A. July 2, 2006). "[T]he regulation makes clear that the ALJ only need re-contact the medical source when the evidence received from the medical source is inadequate to determine whether or not the claimant is disabled," not because the ALJ finds the doctor's opinion inconsistent with the claimant's medical records. Becker v. Barnhart, No. 03–6373, 2005 WL 747047, at *5 (E.D. Pa. Apr. 1, 2005). Indeed, it is well-established that "[w]hen the treating physicians' conclusions are inconsistent with the objective medical evidence in the record, or the limitations on a claimants' ability reported by the treating physicians are not supported by objective medical evidence, the ALJ is permitted

4

to give these conclusions little or no weight." Id. at *4. "In such a case, an ALJ is not obligated to re-contact the treating physician and request an explanation of the inconsistency between the physician's treatment notes and his assessment." McCall v. Colvin, No. 13-4770, 2015 WL 9302929, at *5 (E.D. Pa. Apr. 5, 2018) (citing Thurman v. Barnhart, No. 05-5447, 2007 WL 2728656, at *7 (E.D. Pa. Sept. 18, 2007)).

12. Here, nothing in the record triggered the ALJ's duty to recontact Dr. Putnam. The ALJ fully considered Dr. Putnam's treatment notes and examination findings and determined that they undermined Dr. Putnam's subsequently-issued Medical Source Statement which imposed multiple extreme limitations on Plaintiff's ability to function. The evidence was neither insufficient nor inadequate to determine disability. Accordingly, I will overrule this objection.

B. Objection Two – Rejection of a Portion of the Consultative Examiner's Report

13. Plaintiff's second objection focuses on the ALJ's assessment of the medical opinion by consultative examining psychologist, Dr. Fischetto. Specifically, the ALJ accorded partial weight to Dr. Fischetto's opinion, finding that one portion of the opinion—a marked limitation in Plaintiff's ability to respond appropriately to usual work situations and changes in a routine work setting—was inconsistent with the objective medical evidence.

14. Judge Hey discussed this issue at length and found the ALJ's decision to be well supported by substantial evidence, noting that aside from this one component of Dr. Fischetto's opinion, the ALJ accorded Dr. Fischetto's assessment great weight. As to Dr. Fischetto's imposed marked limitation in responding appropriately to usual work situations and changes in a routine work setting, Judge Hey found that this limitation was inconsistent

with treatment notes from Plaintiff's treating psychiatrist, including the mental status examinations and GAF scores.

15. Plaintiff now offers the cursory argument that "a review of Dr. Fischetto's opinion showed that during mental status examination, Dr. Fischetto observed slow psychomotor activity, flat affect, depressed and anxious mood, limited remote memory, poor impulse control and poor social judgment." (Pl.'s Objections 2.) From this premise, Plaintiff infers that the marked limitation on responding appropriately to usual work situations and changes in a routine work setting was entitled to more weight.

16. I find no merit to Plaintiff's argument and conclude that the ALJ's assessment of Dr. Fischetto's report is supported by substantial evidence of record. The ALJ remarked that objective mental examinations, Plaintiff's GAF scores, Plaintiff's stability on psychotropic medications, and Plaintiff's activities of daily living all undermined any such marked limitation. (R. 22–23.) Indeed, nothing in Dr. Fischetto's examination notes, or those of treating physician Dr. Putnam, revealed any severely abnormal findings consistent with the assessed marked limitation in responding appropriately to usual work situations and changes in a routine work setting.

17. Plaintiff also suggests that because Dr. Fischetto's assessment is consistent with the Medical Source Statement of Dr. Putnam, the ALJ should have accorded it more weight. As Judge Hey aptly noted, however, there was actually very little consistency between the two doctors' opinions, but for the single marked limitation at issue here. (R&R 20–21.)

18. In short, Judge Hey correctly found that substantial evidence supports the ALJ's rejection of the marked limitation on Plaintiff's ability to respond appropriately to usual work

situations and changes in a routine work setting. Accordingly, I will overrule Plaintiff's objection on this ground.

C. <u>Objection 3 – Credibility Analysis</u>

19. In his third objection, Plaintiff takes issue with the ALJ's credibility analysis. Specifically, the ALJ engaged in an extensive discussion of Plaintiff's subjective complaints attributable to his physical and mental impairments and found that although Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were not "entirely credible." (R. 20.) In reaching this determination, the ALJ considered, among other evidence, Plaintiff's daily activities. (<u>Id.</u>)

20. Judge Hey found that it was "appropriate for the ALJ to consider 'the number and type of activities in which in the claimant engages' in assessing credibility." (R&R 26 (quotation omitted).) She concluded that "[t]he ALJ's consideration of Plaintiff's daily activities, in conjunction with the record, as a whole was consistent with the governing regulations." (<u>Id.</u>)

21. Plaintiff objects to that finding, asserting that "[c]ourts have repeatedly criticized ALJs for relying the ability to perform basic daily activities in finding a claimant can perform work and rejecting her claims of disability." (Pl.'s Objections 3.) He contends that his ability to perform household chores does not demonstrate that he could perform a full-time position, eight hours per day, five days per week.

22. Plaintiff's argument is misplaced. "Although certainly '[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity,' it is nonetheless appropriate for the ALJ to consider 'the number and type of

activities' in which the claimant engages." Tuby v. Barnhart, 54 F. App'x 118, 122 n.1 (3d Cir. 2002) (quoting Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981) and Burns v. Barnhart, 312 F.3d 113, 130–31 (3d Cir. 2002)). Indeed, the social security regulations make clear that when assessing credibility, ALJs must consider, among other factors, an individual's daily activity. 20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3).

23. Here, the ALJ did not find that Plaintiff's ability to perform household chores equated to an ability to perform full-time work. Nor did the ALJ completely discount Plaintiff's complaints. Rather, the ALJ found that to the extent Plaintiff claimed to be completely disabled, his credibility was undermined by his activities of daily living. For example, Plaintiff reported that he had difficulty standing, poor eyesight, loss of fine motor skills, an inability to lift more than ten pounds, an inability to walk more than one-quarter to one-half a block, an inability to concentrate, and difficulty focusing. (R. 20.) Yet, Plaintiff admitted to performing household chores, shopping in stores for groceries, paying bills, handling his finances, engaging in reading as a hobby, driving, cooking, and cleaning. (R. 22.) On this basis, the ALJ concluded that "[t]he claimant's allegations are inconsistent with his activities of daily living." (Id.)

24. Notably, the ALJ did not completely reject Plaintiff's subjective complaints of pain. Indeed, the residual functional capacity assessment imposed limitations on Plaintiff consistent with the credible portions of his testimony. (Id.) Accordingly, I will deny this portion of Plaintiff's objections.

D. Objection Four – Listings Analysis

25. Plaintiff's final objection challenges the ALJ's Listings analysis. At this step, the ALJ must determine whether the claimant's impairment matches, or is equivalent to one of the

listed impairments. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). The Listings describe impairments that prevent an adult, regardless of age, education or work experience, from performing "any gainful activity." 20 C.F.R. §§ 404.1525(a); 416.925(a); Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000). "If the impairment is equivalent to a listed impairment, then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119. While the burden is on the claimant to present medical findings to show that his or her impairment meets or equals a Listing, the ALJ should identify the closest applicable impairment, fully develop the record, and explain whether and why the claimant's impairments are or are not equivalent in severity to one of the listed impairments. Id. at 120 n.2.

26. Here, the ALJ considered Listings 12.04 (affective disorders) and 12.06 (anxiety disorders), both of which require, in part, that the related mental impairment cause at least two of the following: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt P, App. 1 §§ 12.04, 12.06. The ALJ here found only a mild restriction in the first category, moderate restrictions in the second and third categories, and no episodes of decompensation.

27. In his Request for Review, Plaintiff argued that the ALJ erred because the assessments of Drs. Putnam and Fischetto established that he suffered from marked impairments in social functioning and maintaining concentration, persistence, and pace. Judge Hey rejected this contention, noting that the ALJ properly discounted the assessments of Drs. Putnam and Fischetto to the extent they imposed such limitations. (R&R 29.) Moreover, Judge Hey

commented that Dr. Putnam's records were inconsistent with any marked/extreme limitations, particularly given the fact that the doctor had consistently assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 51–60, indicating only moderate symptoms.

28. Plaintiff now contends that Judge Hey's analysis was flawed in two respects: (1) the assessments of Dr. Putnam and Fischetto, considered collectively, conclusively established that Plaintiff met the Listings; and (2) the Magistrate Judge's reliance on the GAF score was misplaced because the latest edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5") no longer includes the GAF scale.

29. As to Plaintiff's first argument, the ALJ and Judge Hey properly found, as discussed in detail above, that neither Dr. Putnam's nor Dr. Fischetto's medical assessments were entitled to controlling weight to the extent they imposed marked or extreme limitations on Plaintiff's functioning. Accordingly, I reject this argument for the same reasons set forth previously.

30. As to Plaintiff's second argument, I find it meritless. When the American Psychiatric Association abandoned the GAF scale in the most recent edition of the DSM ("DSM-V"), the Social Security Administration issued an Administrative Message ("AM") in July 2013, instructing ALJs "on how to consider Global Assessment of Functioning (GAF) ratings when assessing disability claims involving mental disorders." AM-13066 (July 22, 2013). Critically, the AM notes that even though the DSM-V eliminated the GAF scale, the SSA "will continue to receive and consider GAF in medical evidence." Id. Specifically, "a GAF rating is a medical opinion as defined in 20 CFR §§ 404.1527(a)(2) and

416.927(a)(2). An adjudicator considers a GAF score with all of the relevant evidence in the case file . . . ." Id.; see also Nixon v. Colvin, 190 F. Supp. 3d 444, 447 (E.D. Pa. 2016)

31. Here, Dr. Putnam consistently assessed Plaintiff with GAF scores in the 51–60 range. Under the previous DSM, an individual with a GAF score of 51–60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning." DSM–IV–TR at 34. These "medical opinions" by Dr. Putnam—issued contemporaneously with his medical examinations—conflicted with his subsequent finding of marked or extreme impairments. As such, the GAF scores provide substantial evidence for both the ALJ's rejection of Dr. Putnam's opinion and the determination that Plaintiff did not meet or equal a Listing. Therefore, I overrule this objection as well.

## IV. CONCLUSION

32. In short, I find that substantial evidence exists in the record to support the ALJ's finding that Plaintiff had the ability, albeit limited, to engage in substantial gainful employment and, therefore, was not disabled within the meaning of the Social Security Act. There is no reversible error in the either ALJ's decision or Judge Hey's review of that decision.

**WHEREFORE**, it is hereby **ORDERED** that:

1. The Report and Recommendation is **APPROVED and ADOPTED**;
2. Plaintiff's Request for Review is **DENIED**; and
3. **JUDGMENT IS ENTERED** in favor of Defendant.

The Clerk of Court shall mark this case **CLOSED**.

                                               **BY THE COURT:**

                                               */s/ Mitchell S. Goldberg*
                                               _____
                                               **MITCHELL S. GOLDBERG,      J.**